By the Court.—
It appears that parol revocations of wills in writing, have, in some instances, been held good in England, before the statute, 29, Ch. II. but this must depend upon the particular circumstances of the case ; such as, that it was the intention of the testator to die intestate ; and that the revocation was complete and conclusive, and not dependent on any subsequent act—And these circumstances are all proper for the consideration of the jury.
There is a case reported in Tothill, 286, where it is said to have been ruled, that a will in writing should not be revoked by parol; and this is before the statute of frauds. But the fasts are not particularly set forth.
*176 The case cited from Perkins, §. 479, in Viner, title Devise, is a much stronger case than the present, where a man had made his will, and two years afterwards made another will. On his death-bed, being dumb, both the wills were handed to him, and being desired to deliver that back; which he intended should stand as his will; and he handed back the will which was first executed ; and this was established as his will after his, death.
The case of Cott vs. Dutton, 2 Sid. 2, 3. where the testator declares his first will, and not his last, should stand; and the first will had the preference.
In looking into this last case, there appears circumstances unfavourable to the execution of the second will, though it was to the benefit of his own daughter; the first in favour of a more distant relation—both the wills are said to be duly published. In both these cases, though the first will was completely revoked by the publication of the second; yet not being cancelled or destroyed, they were restored by the parol declaration of the testator, which could not have been done, if they had been actually cancelled.
In the case now under considerations, it appears the testator did not intend to die intestate; inasmuch as he declared at the same time that the devise to his wife should stand good. He did not consider the revocation complete until the will was cancelled and destroyed, and accordingly gave order to Mr. Stokes, the person who held the will, to cancel and destroy it; which that person refused to do, but informed the testator that he would deliver it to him, and that *177 at might himself cancel and destroy it. The testator never took his will out of the hands of Stokes, nor at any time demanded it for the purpose of cancelling or destroying it but some time after knowing his will to be still in existence, and in the hands where he had placed it, declared that it should stand as his will.
Taking all the circumstances of this case into consideration, it appears to us, in the first place, that Giles did not intend to die intestate; in the second, that he did not consider the revocation complete until the will was cancelled or destroyed; and lastly, as he never called for the will to cancel or destroy it, that it was his intention that it should continue as his will, as appears by his subsequent declaration. Had he considered his first declaration a complete revocation, without the destruction of the will, and that the paper in the possession of Stokes was not valid and unrevoked, the presumption is, that he would have made a new will to the same effect: It would therefore be contrary to every principle of equity to adjudge that a man died intestate, where, from a fair and equitable construction, the intention of the testator appeared otherwise; and where that intention can be supported without violation of any principle of law or equity.—We are therefore of opinion, that the will is good to every intent and purpose.
Had the revocation been completely carried into effect, and the will cancelled, it could not have been revived by any subsequent declaration by parol.